1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RUFUS A. AVENT,

11         Plaintiff,                    No. CIV S-09-3482 JAM DAD P

12     vs.

13   M. CATE et al.,

14         Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16         Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendant Lesane pursuant to Rule 56 of the Federal Rules of

19   Civil Procedure.  Plaintiff has filed an opposition to the motion, and defendant has filed a reply.

20                              **BACKGROUND**

21         Plaintiff is proceeding on his original complaint against correctional sergeant

22   Lesane.  Therein, plaintiff alleges that defendant Lesane has repeatedly retaliated against plaintiff

23   for filing and pursuing inmate appeals against defendant Lesane.  Specifically, plaintiff alleges

24   that defendant Lesane has threatened him with pepper spray, conducted searches of his assigned

25   dormitory, and confiscated his personal property and legal work.  (Compl. at 8-8B & Exs. A &

26   B.)

1

1           **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

2           Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).

5                    Under summary judgment practice, the moving party
                     always bears the initial responsibility of informing the district court
6                    of the basis for its motion, and identifying those portions of "the
                     pleadings, depositions, answers to interrogatories, and admissions
7                    on file, together with the affidavits, if any," which it believes
                     demonstrate the absence of a genuine issue of material fact.
8

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13   after adequate time for discovery and upon motion, against a party who fails to make a showing

14   sufficient to establish the existence of an element essential to that party's case, and on which that

15   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16   concerning an essential element of the nonmoving party's case necessarily renders all other facts

17   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

18   whatever is before the district court demonstrates that the standard for entry of summary

19   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20          If the moving party meets its initial responsibility, the burden then shifts to the

21   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

22   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23   establish the existence of this factual dispute, the opposing party may not rely upon the

24   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25   form of affidavits, and/or admissible discovery material, in support of its contention that the

26   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6  1436 (9th Cir. 1987).

7         In the endeavor to establish the existence of a factual dispute, the opposing party

8  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14         In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

3

**OTHER APPLICABLE LEGAL STANDARDS**

I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  First Amendment Retaliation

Under the First Amendment, prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts.  See Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  Prison officials may not retaliate against prisoners for doing so.  See id. at 568.  In this regard, the Ninth Circuit has explained:

/////

1
2
3
4

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

5   Id. at 567-68.

6   **DEFENDANT LESANE'S MOTION FOR SUMMARY JUDGMENT**

7   I.  Defendant's Statement of Undisputed Facts and Evidence

8          Defendant Lesane's statement of undisputed facts is supported by citations to his

9   own declaration signed under penalty of perjury.  It is also supported by citations to plaintiff's

10   complaint and the exhibits attached thereto.  The evidence submitted to the court by defendant

11   Lesane establishes the following.

12          On April 2, 2009, defendant correctional sergeant Lesane told plaintiff to get out

13   of the shower.  Plaintiff did not do so and instead asked, "What did I do?"  Plaintiff also asked if

14   he could "rinse the soap off."  Defendant Lesane allowed him to rinse off and then pointed his

15   pepper spray at plaintiff for failing to obey orders.  The defendant instructed plaintiff to get out of

16   the shower because it was nearing the time to count inmates at their cells.  (Def.'s SUDF 1-3,

17   Lesane Decl., Pl'.s Compl.)

18          On April 3, 2009, defendant Lesane and correctional officers Love and Vang

19   conducted a routine search of plaintiff's dorm.  During the search they confiscated various items.

20   The search was not limited to plaintiff's dorm.  (Def.'s SUDF 4, Lesane Decl., Pl'.s Compl.)

21          On April 9, 2009, plaintiff filed an inmate grievance concerning defendant

22   Lesane's conduct of April 2 and 3, 2009.  (Def.'s SUDF 5, Lesane Decl., Pl'.s Compl.)

23          According to defendant Lesane, he was not retaliating against plaintiff when he

24   pointed his pepper spray at plaintiff nor when he conducted a routine search of plaintiff's dorm.

25   In fact, defendant Lesane does not even recall plaintiff filing any grievances or complaints

26   /////

1   against him prior to the incidents placed at issue in this litigation.  (Def.'s SUDF 6-7, Lesane

2   Decl., Pl'.s Compl.)

3   II.  Defendant Lesane's Arguments

4               Defense counsel argues that defendant Lesane is entitled to summary judgment in

5   his favor on the merits of plaintiff's retaliation claim because plaintiff's allegations do not rise to

6   the level of a constitutional violation.  As an initial matter, counsel acknowledges plaintiff's right

7   to "speak up" and file prisoner grievances challenging the conditions of his confinement and not

8   be punished for doing so.  Here, however, counsel contends that defendant Lesane did not take

9   any actions against plaintiff to punish him for filing prior grievances against the defendant.  In

10  fact, defendant Lesane does not even recall plaintiff filing grievances against him prior to the one

11  plaintiff filed on April 9, 2009, after the alleged incidents in question.  In addition, counsel

12  contends that defendant Lesane's actions did not chill plaintiff's rights under the First

13  Amendment as evidenced by plaintiff's pursuit of his April 9, 2009 prison grievance.  Finally,

14  counsel contends that defendant Lesane had a legitimate penological interest in demanding that

15  plaintiff get out of the shower on April 2, 2009.  According to the defendant, inmates in the

16  shower needed to be in their cells for counting.  Likewise, defense counsel contends that

17  defendant Lesane had a legitimate penological interest in searching plaintiff's dorm since the

18  seizure of contraband minimizes risks to institution, inmate, and custody staff safety.  (Def.'s

19  Mem. of P. & A. at 7-10.)

20              Alternatively, defense counsel argues that defendant Lesane is entitled to

21  summary judgment in his favor based upon qualified immunity because, assuming the court finds

22  that a constitutional violation has occurred, a reasonable person in the defendant's position could

23  have believed that insisting that plaintiff get out of the shower for the count and searching and

24  confiscating plaintiff's property in a routine search was lawful conduct.  (Def.'s Mem. of P. & A.

25  at 10-11.)

26  /////

III.  Plaintiff's Opposition

Plaintiff's opposition is supported by his own declaration signed under penalty of perjury and by a response to defendant Lesane's statement of undisputed facts.  Therein, plaintiff argues that, on April 2, 2009, he was in the shower when defendant Lesane "busted in" and ordered him to get out while allowing two other inmates to continue showering.  Plaintiff asked what he did to prompt defendant Lesane to point pepper spray in his face.  Plaintiff argues that he also told defendant Lesane that he was going to file another complaint against him due to the defendant's behavior.  According to plaintiff, defendant Lesane laughed in response and told plaintiff he would be back to take all of his property.  On the following day, according to plaintiff, defendant Lesane arrived at plaintiff's dorm and confiscated all of his personal and state-issued property.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2 & 6, Pl.'s Decl.)

Plaintiff also contends that the defendant Lesane is having a self-serving lapse in memory when he declares that he does not recall plaintiff filing prior grievances against him. Plaintiff contends that, on December 15, 2008, he filed a staff complaint (Log # 08-M-3972) against defendant Lesane.  Plaintiff asserts that on February 8, 2009, he filed another staff complaint against defendant Lesane (Log # 09-M-459).  Plaintiff contends that he also verbally warned defendant Lesane that he intended to file another staff complaint against the defendant after he pointed pepper spray at plaintiff, which in turn led to the defendant Lesane searching plaintiff's dormitory and confiscating all of his property the next day.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2-3 & 7, Pl.'s Decl.)

IV.  Defendant Lesane's Reply

In reply, defense counsel does not dispute that defendant Lesane threatened plaintiff with pepper spray, conducted a search of plaintiff's assigned dorm, and confiscated his personal property and legal work, but defense counsel contends that defendant Lesane engaged in these actions in the course of his duties as a correctional officer and not in retaliation for plaintiff having filed grievances against the defendant in the past.  Counsel reiterates that the defendant

1    ordered plaintiff out of the shower so he would be in his cell and bedside during the inmate count

2    on the day in question.  In addition, counsel argues that defendant Lesane conducted a routine

3    search of plaintiff's dorm after obtaining information that there was smoke and possible tobacco

4    or marijuana use occurring in that dorm.  Defense counsel also reiterates that defendant Lesane's

5    actions did not have a chilling effect on plaintiff's conduct.  In fact, counsel, asserts, plaintiff

6    filed numerous documents against defendant Lesane even after the defendant's alleged retaliatory

7    conduct.  Finally, counsel reiterates that even if the court were to assume a constitutional

8    violation in this case, defendant Lesane acted reasonably under the circumstances and is entitled

9    to qualified immunity.  (Def.'s Reply at 2-11, Lesane Supp. Decl.)

**ANALYSIS**

I.  Plaintiff's Retaliation Claim

12           The undersigned finds that defendant Lesane has borne his initial responsibility of

13   demonstrating that no reasonable juror could conclude that he retaliated against plaintiff in

14   violation of the First Amendment.  Specifically, the evidence presented by defendant Lesane

15   establishes that on April 2, 2009, defendant Lesane told plaintiff to get out of the shower.

16   Plaintiff did not comply with the order and instead asked, "What did I do?"  Plaintiff also asked

17   if he could "rinse the soap off."  Defendant Lesane allowed him to rinse off and then pointed his

18   pepper spray at him in order to get plaintiff out of the shower.  The defendant instructed plaintiff

19   to get out of the shower because it was nearing the time to count inmates in their cells.  On the

20   following day, defendant Lesane, along with correctional officers Love and Vang conducted a

21   routine search of plaintiff's dorm and confiscated various items.  They searched the dorm to

22   confiscate and eliminate tobacco and/or marijuana.  Defendant Lesane was not retaliating against

23   plaintiff when he pointed his pepper spray at him or when he searched his dorm.  In fact, he does

24   not recall plaintiff filing any grievances or complaints against him prior to the incidents at issue

25   in this litigation.  (Lesane Decls., Pl'.s Compl.)  Given this evidence, the burden shifts to plaintiff

26   to establish the existence of a genuine issue of material fact with respect to his retaliation claim.

1    The undersigned finds that plaintiff has submitted sufficient evidence establishing

2  a legitimate dispute as to a genuine issue of material fact in support of his retaliation claim.  First,

3  as to the adverse action component of plaintiff's retaliation claim, it is undisputed that defendant

4  Lesane threatened plaintiff with pepper spray while he was in the midst of taking a shower.  In

5  addition, according to plaintiff, defendant Lesane threatened to take all of plaintiff's property

6  after plaintiff told the defendant that he was going to file another staff complaint against him.

7  Defendant Lesane's threats could easily be construed as a threat of adverse action.  See Brodheim

8  v. Cry, 584 F.3d 1262 (9th Cir. 2009).  In Brodheim, the Ninth Circuit explained that "the mere

9  threat of harm can be an adverse action, regardless of whether it is carried out because the threat

10  itself can have a chilling effect."  Id. at 1270.  "The power of a threat lies not in any negative

11  actions eventually taken, but in the apprehension it creates in the recipient of the threat."  Id. at

12  1271.  Finally, it is undisputed that, on the day following the incident in the shower, defendant

13  Lesane and his fellow officers did in fact search and/or confiscated plaintiff's personal property.

14  Viewing the facts in the light most favorable to plaintiff, defendant Lesane's threats towards

15  plaintiff as well as his search of plaintiff's dorm and/or confiscation of his property constitute

16  adverse actions.  See, e.g., Valandingham v. Bojorquez, 866 F.2d 1135, 1137-38 (9th Cir. 1989)

17  (concluding that plaintiff's showing of the existence of a genuine issue of material fact as to his

18  retaliation claim precluded the granting of summary judgment in favor of the defendant).

19    To be sure, a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo*

20  *propter hoc*, literally, "after this, therefore because of this."  Huskey v. City of San Jose, 204

21  F.3d 893, 899 (9th Cir. 2000).  The plaintiff must show causation or that the defendant was

22  substantially motivated by or because of plaintiff's protected conduct.  In this case, plaintiff has

23  offered evidence of causation in the form of suspect timing.  See Pratt v. Rowland, 65 F.3d 802,

24  807 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory

25  intent.").  Specifically, plaintiff has presented evidence that defendant Lesane threatened plaintiff

26  with pepper spray not long after plaintiff had filed two staff complaints against the defendant.  In

1  addition, defendant Lesane threatened to take all of plaintiff's property and subsequently

2  searched plaintiff's dorm and confiscated his personal and state-issued property after plaintiff

3  told the defendant that he was going to file another staff complaint against him for his alleged

4  conduct in connection with the incident in the shower room.  This evidence is by no means

5  conclusive of retaliatory motive.  However, again, viewing the facts in the light most favorable to

6  plaintiff, the timing of events combined with the statements allegedly made by defendant Lesane

7  are sufficient to raise a triable issue of fact regarding defendant Lesane's motives.  See Bruce v.

8  Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (statements and suspect timing raised triable issue of

9  fact regarding whether the defendants' motive behind plaintiff's gang validation was retaliatory).

10         As to the fourth prong of plaintiff's retaliation claim, the chilling effect on

11  plaintiff's exercise of his First Amendment rights, the Ninth Circuit has explained that focusing

12  on whether a plaintiff was actually chilled in the exercise of his constitutional rights is incorrect.

13  Brodheim, 584 F.3d 1271 (citing Rhodes, 408 F.3d at 568-69.).  An objective standard governs

14  the chilling inquiry.  Specifically, the Ninth Circuit has held that a plaintiff does not have to show

15  that "his speech was actually inhibited or suppressed," but rather that the adverse action at issue

16  "would chill or silence a person of ordinary firmness from future First Amendment activities."

17  Rhodes, 408 F.3d at 568-69.  The Ninth Circuit has explained that "it would be unjust to allow a

18  defendant to escape liability for a First Amendment violation merely because an unusually

19  determined plaintiff persists in his protected activity."  Rhodes, 408 F.3d at 568 (quoting

20  Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).  In the

21  prison context in particular, the Ninth Circuit has noted that the consequences of not employing

22  an objective standard would be "remarkably perverse":

23         [T]he Prison Litigation Reform Act of 1995 ("PLRA") establishes
               strict prerequisites to the filing of prisoner civil rights litigation . . .
24         . Rejecting [a prisoner's retaliation] suit on the basis of his having
               filed administrative grievances seeking to vindicate his rights thus
25             would establish a rule dictating that, by virtue of an inmate's
               having fulfilled the requirements necessary to pursue his cause of
26  /////

1
2

> action in federal court, he would be precluded from
> prosecuting the very claim he was forced to exhaust.
>
> Indeed, were we to adopt such a theory [that a prisoner's filing of a
> retaliation suit precludes relief on a retaliation claim], prisoner
> civil rights plaintiffs would be stuck in an even more vicious
> Catch-22.  The only way for an inmate to obtain relief from
> retaliatory conduct would be to file a federal lawsuit; yet as soon as
> he or she does, it would become clear that he or she cannot
> adequately state a claim for relief.

3
4
5
6

7 Rhodes, 408 F.3d at 569.  In this case, this court cannot say as a matter of law that a reasonable

8 person would not have been chilled in the exercise of his constitutional rights by defendant

9 Lesane's alleged threats and conduct.

10        Finally, as to the fifth prong of plaintiff's retaliation claim, the court is required to

11 "afford appropriate deference and flexibility" to prison officials when evaluating proffered

12 legitimate correctional reasons for alleged retaliatory conduct.  Pratt, 65 F.3d at 807.  Preserving

13 institutional order, discipline, and security are legitimate penological interests that, if they

14 provide the motivation for an official act taken, will defeat a retaliation claim.  See Barnett v.

15 Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

16 However, "prison officials may not defeat a retaliation claim on summary judgment simply by

17 articulating a general justification for a neutral process, when there is a genuine issue of material

18 fact as to whether the action was taken in retaliation for the exercise of a constitutional right."

19 Bruce, 351 F.3d at 1289-90.  Here, for example, if defendant Lesane used his search of plaintiff's

20 dorm as "a cover or a ruse" to retaliate against plaintiff for the staff complaints plaintiff had

21 previously filed or for expressing his intent to file a staff complaint with respect to the

22 defendant's alleged conduct in the shower room incident, the defendant cannot now assert that

23 his search of plaintiff's dorm and seizure of plaintiff's property served legitimate correctional

24 goals.  Viewing the facts in the light most favorable to plaintiff, the court finds there is sufficient

25 conflicting evidence to raise a triable issue of fact regarding whether defendant Lesane's actions

26 were retaliatory in nature.

1    III.   Qualified Immunity

2              "Government officials enjoy qualified immunity from civil damages unless their

3    conduct violates 'clearly established statutory or constitutional rights of which a reasonable

4    person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

5    Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

6    immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

7    the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

8    statutory or constitutional right and (2) whether the right at issue was "clearly established."

9    Saucier v. Katz, 533 U.S. 194, 201 (2001).

10             Although the court was once required to answer these questions in order, the

11   United States Supreme Court has clarified that "while the sequence set forth there is often

12   appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223,

13   __, 129 S. Ct. 808, 818 (2009).  In this regard, if a court decides that plaintiff's allegations do not

14   make out a statutory or constitutional violation, "there is no necessity for further inquiries

15   concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that

16   the right at issue was not clearly established at the time of the defendant's alleged misconduct,

17   the court may end further inquiries concerning qualified immunity at that point without

18   determining whether the allegations in fact make out a statutory or constitutional violation.

19   Pearson, 129 S. Ct. at 818-21.

20             As discussed above, the facts alleged taken in the light most favorable to the

21   plaintiff demonstrate that defendant Lesane's conduct violated plaintiff's rights under the First

22   Amendment.  Moreover, the state of the law in 2009, when the alleged constitutional violations

23   took place, would have given defendant Lesane fair warning that he could not retaliate against

24   plaintiff for his filing of an inmate grievance or expressing his intent to do so.  As early as 1995,

25   "the prohibition against retaliatory punishment [was] clearly established law in the Ninth Circuit

26   /////

1  for qualified immunity purposes." See Pratt, 65 F.3d at 806.  Accordingly, defendant Lesane's

2  motion for summary judgment on the basis of qualified immunity should also be denied.

3                                        **CONCLUSION**

4            Accordingly, IT IS HEREBY RECOMMENDED that defendant Lesane's

5  December 14, 2010 motion for summary judgment (Doc. No. 21) be denied.

6            These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

8  one days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within seven days after service of the objections.  The parties are

12  advised that failure to file objections within the specified time may waive the right to appeal the

13  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: June 16, 2011.

16  _____
    DALE A. DROZD

17  UNITED STATES MAGISTRATE JUDGE

18  DAD:9
    aven3482.57